**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 26-456-DLB**

**WEI WANG** **PETITIONER**

**v.** **MEMORANDUM ORDER**

**MARC FIELDS, et al.** **RESPONDENTS**

*** **** *** **** ***

## I. INTRODUCTION

This matter is before the Court on Petitioner Wei Wang's Petition for Writ of Habeas Corpus. For the following reasons, the Court **grants** the Petition.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Wei Wang is a native and citizen of China. (Doc. # 1 ¶ 20). He was paroled into the United States on February 5, 2009. (*Id.* ¶ 21). Shortly thereafter, Wang filed an I-589 application for asylum, withholding of removal, and protection under the Convention Against Torture. (*Id.* ¶ 22). On January 12, 2012, an immigration judge ("IJ") in New York denied Wang's request for asylum and relief under the Convention Against Torture and ordered him removed from the United States. (Doc. # 1-1). However, in the same order, the IJ granted Wang's request for withholding of removal to China pursuant to 8 U.S.C. § 1231(b)(3). (*Id.*). Both Wang and the Department of Homeland Security ("DHS") waived the right to appeal the IJ's order. (*Id.*). Wang continued to reside in the United States "free from detention" for nearly fifteen years thereafter. (Doc. # 5 at 4).

On September 28, 2025, Wang attempted to purchase a firearm in Louisville, Kentucky. (Doc. # 4 at 1). Although this attempt was unsuccessful, Wang represented on his application that he was a U.S. Citizen. (Doc. # 4-1).

On October 15, 2026 Immigration and Customs Enforcement ("ICE") officers detained Wang at the Cincinnati/Northern Kentucky International Airport as he attempted to board a flight to New York. (Doc. # 1 ¶ 23). At the time of his arrest, DHS served Wang with a "Warrant for Arrest of Alien" pursuant to 8 U.S.C. §§ 1226 and 1357. (Doc. # 4-2). Wang was subsequently transferred to the Kenton County Detention Center in Covington, Kentucky, where he remains in ICE custody. (Doc. # 1 ¶ 23).

Wang filed the instant Petition for Writ of Habeas Corpus on October 23, 2026 (Doc. # 1). He argues that his present detention violates his right to due process because ICE detained him "with full knowledge [that he] cannot be removed to China, there is no notice of intent to remove to a third country which would entitle [Wang] the right [sic] of a hearing and response, and the Respondents have provided no grounds for termination of withholding of removal." (*Id.* ¶ 40). Wang also asserts that ICE violated the statutes governing termination of withholding of removal (*Id.* ¶¶ 42-47) and that he is detained in violation of 8 C.F.R. § 241.4. (*Id.* ¶¶ 48-50). The Federal Respondents[1] filed a Response in Opposition on November 9, 2026. (Doc. # 4). Wang filed a Reply on November 12, 2026. (Doc. # 5). Accordingly, this matter is ripe for review.

---

[1] Wang named as Respondents Samuel Olson, Director of ICE Chicago Field Office, David J. Venturella, Acting Director of ICE, Markwayne Mullin, Secretary of DHS, and Todd Blanche, Attorney General of the United States (collectively, the "Federal Respondents"). Additionally, Wang named Marc Fields, Jailer, Kenton County. Respondent Fields did not file a response to the Petition.

## III. ANALYSIS

At its core, the writ of habeas corpus provides "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). And this relief is available to "every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004). A district court may grant a writ of habeas corpus to any person who shows that he is detained within the Court's jurisdiction in violation of the Constitution or the laws and treaties of the United States. 28 U.S.C. § 2241(c)(3). In making such a showing, "the petitioner 'has the burden of establishing his right to federal habeas relief and of proving all facts necessary to show a constitutional violation.'" *Caver v. Straub*, 349 F.3d 340, 351 (6th Cir. 2003) (quoting *Romine v. Head*, 253 F.3d 1349, 1357 (11th Cir. 2001)). The Supreme Court has recognized that habeas relief extends to noncitizens. *See Rasul v. Bush*, 542 U.S. 466, 483 (2004) ("[Alien] Petitioners contend that they are being held in federal custody in violation of the laws of the United States . . . Section 2241, by its terms, requires nothing more.").

The Court accepts Wang's unrebutted allegations, insofar as they are consistent with the record. *See Couch v. Booker*, 650 F. Supp. 2d 683, 686 (E.D. Mich. 2009) ("Respondent has not disputed these facts in his answer. The Court will therefore accept the factual allegations contained within the habeas petition insofar as they are consistent with the record.") (citation omitted); *see also Whitten v. Tomlinson*, 160 U.S. 231, 242 (1895) ("In a petition for a writ of habeas corpus, verified by the oath of the petitioner, as required by section 754 of the Revised Statutes, facts duly alleged may be taken to be ture [sic] unless denied by the return, or controlled by other evidence."); 28 U.S.C. § 2242 ("Application for a writ of habeas corpus shall be in writing signed and verified by the

person for whose relief it is intended *or by someone acting in his behalf*.") (emphasis added).

Wang brings three claims for relief in his Petition. First, Wang asserts that the Federal Respondents violated his Fifth Amendment right to due process when they detained him because Wang cannot be removed to China and the Federal Respondents provided "no notice of intent to remove [him] to a third country." (Doc. # 1 ¶ 40). And, Wang continues, if the Federal Respondents intend to remove him to a third country, he is entitled to a "hearing and response[.]" (*Id.*). Second, Wang argues that, because he cannot be removed to China, and the government has not provided notice of an intent to terminate his withholding of removal or followed the requisite process to carry out a termination, his present detention violates 8 U.S.C. § 1231(b)(3) and 8 C.F.R. § 208.24. (*Id.* ¶¶ 43-47). Finally, Wang contends that because he was "granted protections of withholding of removal to China[,]" his present detention violates 8 C.F.R. § 241.4(b)(3). (*Id.* ¶¶ 49-50).

**A. Wang's Due Process Claim**

The Court turns first to Wang's due process argument.

***1. Wang's withholding-only relief does not preclude detention to effect a third country removal.***

In 2012, Wang was ordered removed and his asylum claim was denied. On the same day, the IJ granted Wang withholding of removal to China pursuant to 8 U.S.C. § 1231(b)(3). Under that section, "the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." The Sixth Circuit has recently reiterated

that this "statute is *country specific*." *Ojukwu v. Lyons*, 193 F.4th 1046, 1048 (6th Cir. 2026). Although the government may not remove Wang to China—at least not while his withholding of removal remains in effect—it may remove him to a third country. *Johnson v. Guzman Chavez*, 594 U.S. 523, 531-32 (2021) ("In short, withholding-only relief is country-specific. It relates to *where* an alien may be removed. It says nothing, however, about the antecedent question *whether* an alien is to be removed from the United States."). And § 1231(a)(6) authorizes detention for "a period reasonably necessary to bring about that alien's removal from the United States." *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). Thus, with respect to his removal to any country other than China, Wang occupies the same position as any alien subject to a final order of removal.

The Federal Respondents devote the bulk of their Response to this point. (*See* Doc. # 4 at 2-3). They maintain that although Wang may not be removed to China, nothing prevents his removal to a third country. (*Id.* at 2). But the Parties agree on this point. Wang, in his Reply, "concedes an alien with a removal order given protections of withholding of removal to a particular country or countries may still be removed to a third country[.]" (Doc. # 5 at 4 (citing *Johnson*, 594 U.S. at 536-37)). So, to the extent that Wang contends that he has a general "right to be free from detention" because he may not be removed to China, he is mistaken. (Doc. # 5 at 5). DHS may detain him to effectuate his removal to a third country. Thus, Wang has failed to show that the Federal Respondents "disregard[ed]" his withholding of removal and thereby deprived him of his right to due process. (Doc. # 1 ¶ 39). Insofar as Count One of Wang's Petition is premised on this claim, it necessarily fails.

**2. *The Federal Respondents' failure to provide notice or an opportunity to be heard violated Wang's Fifth Amendment right to due process.***

However, in Count One Wang also argues that he was deprived of due process because the Federal Respondents have not provided him with "notice of intent to remove to a third country" or the opportunity for a "hearing and response[.]" (*Id.* ¶ 40). The Federal Respondents do not contest this fact in their Response. (*See* Doc. # 4 at 2-3). As a result, the Court must consider whether the Federal Respondents' failure to provide Wang with notice of their intent to remove him to a third country violated his Fifth Amendment right to due process.

Strangely, when the Federal Respondents detained Wang, they served him with a "Warrant for Arrest of Alien" Form I-200. But this document invokes § 1226, a statute which governs detention "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). This decision has already been made—an IJ ordered Wang removed more than ten years ago. Nevertheless, at that time, the Federal Respondents did not detain Wang but permitted him to remain under supervision. As a result, his detention is governed by § 1231 and its implementing regulations. *See Martinez v. Larose*, 968 F.3d 555, 560 (6th Cir. 2020) (observing that § 1231(a) applies to noncitizens who "ha[ve] already been adjudged to be removable"). And because Wang's ninety-day removal period has long since expired, his continued detention falls under § 1231(a)(6), which governs detention beyond the removal period. "But to detain an alien in [Wang's] position on this basis, the Government must satisfy the conditions laid out in [that provision]. And those conditions have been refined and codified in the regulatory procedures outlined in 8 C.F.R. § 241.4." *M.L.P. v. Woosley*, No. 4:25-CV-170-BJB, 2025 WL 3721863, at *2 (W.D. Ky. Dec. 23, 2025). *See also United States ex*

*rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954) (holding that agencies must follow their own procedures, rules, and instructions).

**a. Applicability of 8 C.F.R. § 241.4**

From the outset, § 241.4 encompasses Wang because he was granted withholding of removal under 8 U.S.C. § 1231(b)(3). *See* 8 C.F.R. § 241.4(b)(3); *El Majouti v. U.S. Att'y Gen./Ice*, No. 2:26-CV-01345-JLT-EPG-HC, 2026 WL 2198832, at *4 (E.D. Cal. July 30, 2026) ("As Petitioner is a noncitizen granted withholding under section 241(b)(3) of the Immigration and Nationality Act . . . 8 C.F.R. § 241.4 applies to Petitioner). The more difficult question, however, is whether § 241.4's procedures for revoking release apply to Wang's current detention.

Section 241.4(*l*)(1), titled "[v]iolations of conditions of release[,]" establishes the procedures for revoking the release of persons who have been "released under an order of supervision or other conditions of release" and who have violated those conditions. "Upon revocation, the alien will be notified of the reasons for revocation of his or her release," and then "[t]he alien will be afforded an initial informal interview promptly after his or her return to [ICE] custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." *See* 8 C.F.R. § 241.4(*l*)(1). Here, neither the Federal Respondents nor Wang have produced an order of supervision or other document establishing the conditions of Wang's release. This, however, does not necessarily render § 241.4(*l*) inapplicable.

"[Section] 241.4(*l*) broadly identifies the noncitizens within its scope as any individual 'who has been released under an order of supervision *or other conditions of release*.'" *Romero v. Bausch*, No. 26-CV-00803-MAV, 2026 WL 1998751, at *5

(W.D.N.Y. July 10, 2026) (emphasis in original). Thus, the absence of a formal order of supervision does not, by itself, preclude application of § 241.4(*l*)(1). And, here, Wang was plainly subject to *some* form of supervised release over the past fourteen years. He was not removed within the ninety-day removal period following the IJ's January 12, 2012 Order, and any noncitizen who is not removed within that period "shall be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3).

Under § 241.4(*l*)(1), Wang was entitled to "noti[ce] of the reasons for revocation of his . . . release," and an "informal interview promptly after his . . . return to Service custody to afford [him] an opportunity to respond to the reasons for revocation stated in the notification." *See also Castro v. Woosley*, No. 4:26-cv-47-RGJ, 2026 WL 1507758, at *3 (W.D. Ky. May 29, 2026) (holding that § 241.4(*l*)(1) requires that aliens in Wang's position receive a notification of the reasons for revocation of supervision and a prompt informal interview). Wang alleges that he received neither. (Doc. # 1 ¶ 40; Doc. # 5 at 2). At the time of Wang's arrest, he was served with a Form I-200 Warrant for Arrest of Alien. However, as discussed above, this document authorizes detention pursuant to § 1226, which governs aliens who are in the midst of removal proceedings. One may question whether this document could provide Wang with notice of the Federal Respondents' reasons for revoking his *supervision*. In fact, Wang alleges that, to this day, he has yet to receive notice of the government's intent to remove him to a third country, let alone information regarding the country to which he will be deported. (*Id.*; Doc. # 5 at 6). Even in their Response, the Federal Respondents do not actually state that they intend to remove Wang to a third country or are taking any steps to carry out such a removal—

merely that they have the authority to do so.[2] (Doc. # 4 at 2-3). Still, even assuming this document provided Wang with adequate notice, the Federal Respondents do not dispute Wang's assertion that he has not received an informal interview or a chance to challenge the government's ability to remove him to a third country. (Doc. # 1 ¶ 40). As a result, the Federal Respondents failed to comply with 8 C.F.R. § 241.4 in detaining Wang.

**b. Effect of the Federal Respondents' noncompliance**

The Court must determine the import of the Federal Respondents' failure to follow their own regulations. In *United States v. Accardi*, the Supreme Court held that when the government implements regulations "with the force and effect of law," agencies are bound to follow their own "existing valid regulations." 347 U.S. 260, 266-68 (1954). This Court and other district courts in this circuit have held that failure to comply with 8 C.F.R. § 241.4(*l*) in revoking an alien's supervised release violates the right to due process. *See, e.g., K.E.O. v. Woosley*, No. 4:25-cv-74-RGJ, 2025 WL 2553394, at *7 (W.D. Ky. Sept. 4, 2025); *Ahmed v. Olson*, No. 2:26-cv-89-DLB, 2026 WL 836123, at *6 (E.D. Ky. Mar. 26, 2026). Indeed, because the Federal Respondents revoked Wang's supervision without providing him notice of an intent to remove him to a third country and an opportunity to challenge the revocation and concomitant detention, Wang "has been prejudiced by the denial of his due process rights." *Ahmed*, 2026 WL 836123, at *6.

---

[2] In their Response, the Federal Respondents simply argue that because Wang "has been detained for less than one month . . . he does not have a cognizable due process claim." (*Id.* at 2). In his Reply, Wang seems to agree that he does not fall into the six-month period following the removal period during which detention is presumptively reasonable. (Doc. # 5 at 6-7). However, this fact does not change the Federal Respondents' obligation to comply with their own regulations in revoking supervision when, as here, they have elected not to detain an alien following the removal period but instead permitted him to remain on supervision.

The government's failure to comply with its own binding regulations "implicates the fundamental rights of notice and an opportunity to be heard." *Romero v. Bausch*, No. , 26-CV-803-MAV, at *6 (W.D.N.Y. July 10, 2026). As a result, relief is warranted. Consistent with this Court's prior practice and the approach adopted by district courts throughout the country, the Court finds that the appropriate remedy is immediate release under the conditions of Wang's preexisting supervision. *See Ahmed*, 2026 WL 836123, at *6; *Meza v. Woosley*, No. 4:26-cv-148-BJB, 2026 WL 2044024, at *3 (W.D. Ky. July 15, 2026) ("Therefore the most appropriate remedy is not additional time for belated process, but rather release consistent with the conditions of Petitioner's previous supervision order."); *K.E.O.*, 2025 WL 2553394, at *7.

To be sure, nothing in this Order "constrain[s the Federal Respondents] from any future action regarding the underlying removal order or subsequent supervision order." *Meza*, 2026 WL 2044024, at *3. The Federal Respondents may remove Wang to a third country, and they may detain him in order to carry out that removal. In doing so, however, due process requires that the Federal Respondents comply with their own regulations related to notice and an informal interview.[3]

## IV. CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

(1) Wang's Petition for Writ of Habeas Corpus (Doc. # 1) is **GRANTED**;

(2) Respondents are **ORDERED** to **immediately release** Wang from custody, subject to the conditions that governed his release before he was detained in October 2026; and

[3] Because the Court finds that Wang is entitled to habeas relief under Count One, it need not address the claims presented in Counts Two and Three.

(3) Respondents shall file a Status Report with this Court **on or before December 4, 2026** to certify compliance with this Order.

This 23rd day of November, 2026.




**Signed By:**

***David L. Bunning***

**Chief United States District Judge**

G:\Judge-DLB\DATA\ORDERS\Cov2026\26-456 Order granting habeas.docx